## HILL OIL & GAS CO. v. WHITE *et al.*

No. 4647.   Opinion Filed June 22, 1915.

On Petition for Rehearing, October 12, 1915.

Second Petition for Rehearing Denied June 6, 1916.

(157 Pac. 710.)

1. **SPECIFIC PERFORMANCE—Oil and Gas Lease—Option to Terminate.** A surrender clause in an oil and gas lease, which gives to the lessee an option to terminate such lease at any time, deprives the lessee of the right to specific performance, until it has performed the contract or placed itself in such a position that it might be compelled to perform the same on its part.

2. **SPECIFIC PERFORMANCE — Right — Contracts Enforceable.** Specific performance will not lie unless the agreement is certain, fair, and just in all its parts; and in such an action any element showing that the contract is unfair, or unjust, and against good

conscience, will justify the court in refusing such decree, although the contract, had it been executed, might offer no sufficient grounds for cancellation. Following **Superior Oil & Gas Co. v. Mehlin**, 25 Okla. 809, 108 Pac. 545, 138 Am. St. Rep. 942.

3.　**COURTS—Federal Courts—Practice.** The case of Guffey et al. v. Smith et al., 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856, has no application to the instant case, as the opinion in that case was based upon the decisions of the Supreme Court of Illinois; the Supreme Court of the United States specifically holding that the Illinois "decisions constitute rules of property and must be accepted and applied in passing upon complainant's rights."

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Action by the Hill Oil & Gas Company against J. M. White and others. Judgment for defendants, and plaintiff brings error. Remanded, with directions, and rehearing denied.

*P. E. Magee, H. B. Martin,* and *A. F. Moss,* for plaintiff in error.

*McDougal & Lytle, Ramsey & De Meules, Malcolm E. Rosser,* and *Owen & Stone, amici curiae,* for defendants in error.

RITTENHOUSE, C. On September 11, 1911, J. M. White entered into a contract with the Hill Oil & Gas Company, wherein he agreed to make and enter into an oil and gas mining lease on the S. W. ¼ of section 24, township 17 N., range 7 east of the Indian Meridian, such lease to be executed on or before January 1, 1913, and to contain, among other provisions, a surrender clause that for and in consideration of the sum of $1 J. M. White would grant unto the Hill Oil & Gas Company the exclusive option and right to terminate the lease or any portion thereof at any time, and all liability of the Hill Oil & Gas Company as to the portion released would im-

mediately cease and terminate. On October 9, 1912, the Hill Oil & Gas Company instituted this action against J. M. White and others for the specific performance of this contract, and it is alleged in the petition that the consideration for the contract was, in fact, $160, and was at the time a fair and adequate consideration, being as much as the market value of the lease for oil and gas mining purposes upon said land at the time the contract was entered into. The petition further alleged that defendant White had, before the time of the execution of the contract declared upon, purchased from the Creek Nation the lands in question, under the laws of the United States and rules and regulations of the Department of the Interior governing the sale of the unallotted lands of the Five Civilized Tribes; that White had paid under the regulations of the Department of the Interior a part of the consideration for the purchase of said land, and engaged to pay the balance of said consideration at a later period, when his contract of purchase entitled him to receive the title in fee to said lands; that by the terms of said contract White agreed, among other things, to complete the performance of his contract of purchase according to its terms, and that in default on his part so to do the plaintiff would have the right to complete said payments on behalf of White, and that when White should receive his patent, or full and complete title to the lands in question, he would immediately, and on or before January 1, 1913, execute an oil and gas mining lease covering said lands to the plaintiff, which form of oil and gas lease was attached to the contract; that before the commencement of this action White had completed the payment of the purchase money for said land, and received a deed from the Creek Nation conveying to him

the title in fee; that plaintiff had before the commence-ment of this action tendered White and his codefendants, Emma M. White and C. J. Wrightsman, a form of lease in accordance with the terms of the contract, and de-manded execution, which was refused. It is further al-leged that plaintiff had gone into possession of said land under said contract for the purpose of performing the same on its part, and the prayer is for the specific per-formance of the contract and general and equitable relief. A demurrer was filed to the petition, and the court sus-tained the same on the ground that the surrender clause as hereinbefore set out rendered the lease such a contract as a court of equity would refuse to decree specific per-formance thereof. The plaintiff stood on its petition, and the court rendered judgment dismissing the same, and the cause is brought here for review.

This court held in *Kolachny v. Galbreath,* 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451, that a sur-render clause which gave to the lessee the right at any time to surrender and terminate the lease, after which all payments or liability should cease and terminate, de-prived the lessee of the right of specific performance, directly or indirectly, until he had performed the con-tract or placed himself in such a position that he might be compelled to perform it on his part.

In the case of *Superior Oil & Gas Co. v. Mehlin,* 25 Okla. 809, 108 Pac. 545, 138 Am. St. Rep. 942, a contract was entered into whereby it was stipulated that James G. Mehlin had filed on certain lands as a citizen of the Cherokee Nation, and that, inasmuch as the legal right to receive the land was not settled, as soon as the rights of said Mehlin were settled in his favor, he would exe-cute an oil and gas lease to the Superior Oil & Gas Com-

pany in accordance with the terms and conditions required by the Secretary of the Interior; but, if such requirements were not made, a regular oil and gas lease, as used in the State of Kansas, should be executed. Under the evidence it was shown that the lease was to run for 15 years, or as long thereafter as oil and gas, or either of the same, should be produced; but, in case the operations were not commenced in the 15 years, the company was to pay an indefinite sum for each additional year such commencement of operations was delayed. The court held, under the terms of the proposed lease, that it was left entirely to the action of the lessee to either drill or not drill for oil and gas, and that the general rule applied that contracts unperformed, which are optional as to one of the parties, are optional as to both, and refused to order a specific performance requiring the owner to enter into the lease, on the ground that the lease contract sought to be enforced presented terms which precluded its favorable consideration at the hands of the court.

The question raised in the instant case comes within the rules laid down in the foregoing cases. Here White entered into a contract with the Hill Oil & Gas Company that White should execute a lease to the lands in controversy, which lease should provide that White should grant unto the Hill Oil & Gas Company the exclusive option and right to release and terminate the grant given by the oil and gas lease or any portion thereof at any time, and that all liability of the Hill Oil & Gas Company as to the portion released should cease and terminate. This was the condition of the lease under consideration in *Kolachny v. Galbreath, supra,* and in which the court held that a specific performance would not be enforced.

In that case, however, an attempt was made to enforce the terms of the lease. In the instant case, the relief asked is that White be required to execute a lease containing a surrender clause. In the case of the *Superior Oil & Gas Company v. Mehlin, supra,* the plaintiff endeavored to require Mehlin to execute an oil and gas lease, and under the facts in that case the court held that specific performance would not lie, unless the agreement was certain, fair, and just in all its parts, and that, in such an action, any elements showing that the contract was unfair, unjust, and against good conscience would justify the court in refusing a decree, although the contract, had it been executed, might offer no sufficient grounds for cancellation, and the court thereupon refused to order a specific performance of the contract.

It is insisted that, because of the allegation in the petition that the Hill Oil & Gas Company was already in possession of the premises, the company did not need the interposition of a court of equity to enforce the performance of the terms of the lease, but that it was entitled to the execution of the lease, because it had paid a full, fair, and adequate consideration. If we should take these views as conclusive, and order a decree to be entered requiring the execution of the oil and gas lease containing a surrender clause, which, at the option of the lessee, he could terminate at will, we should be doing a vain and useless thing, by rendering a decree settling the rights of parties which one of them at will could set aside. We do not think that the agreement in this case is fair and just in all its parts, as it would give the Hill Oil & Gas Company an unfair and unjust advantage over the defendants.

Considerable argument has been devoted to the case of *Guffey et al. v. Smith et al.*, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856. That case deals with the subject of an oil and gas lease as construed by the Supreme Court of Illinois, and has no application to the case at bar. It specifically holds that the construction placed upon an option in an oil and gas lease by the Supreme Court of the State of Illinois constituted rules of property, and must be accepted and applied in passing on the rights of the parties, clearly holding that they construed such lease under the decisions of the State of Illinois, which decisions are in direct conflict with the decisions of this state. The case turns upon a question of federal procedure; the court holding it must follow the Supreme Court of Illinois in the construction of the contract when it is to determine the substantive rights of the parties, but in the matters of procedure in equity the federal court is not bound by the state practice.

We therefore conclude that all the questions raised by this proceeding have been determined by this court in the cases of *Kolachny v. Galbreath* and *Superior Oil & Gas Co. v. Mehlin, supra.* The demurrer was therefore properly sustained, and the cause should be affirmed; but owing to the fact that the record discloses that money was paid, and possibly improvements made, the cause is remanded to the district court of Creek county, with instructions to take evidence upon the claim of the Hill Oil & Gas Company for money advanced and improvements made, making any judgment rendered a lien on the land involved.

## ON PETITION FOR REHEARING.

HARDY, J. The opinion of the Supreme Court Commission was approved herein June 22, 1915, affirming the action of the lower court, which sustained the demurrer to the petition, but remanding the case to the district court, with instructions to take evidence upon the claim of the Hill Oil & Gas Company for money advanced and improvements erected, making any judgment rendered a lien on the lands involved. The matter is now before us on petition for rehearing, and we are asked, in view of the opinion of the Supreme Court of the United States in *Guffey v. Smith*, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856, to reconsider the principles of law announced and to conform to the views of the Supreme Court in that case.

The original opinion is in harmony with the views of this court as previously expressed, and upon an examination of the case of *Guffey v. Smith, supra,* and the authorities called to our attention in briefs of counsel, we adhere to these views. The case of *Guffey v. Smith* was an action for injunction, brought in the United States District Court for the Eastern District of Illinois, by the holders of an oil and gas lease, to enjoin operations under a later and similar lease, and for other relief. The Circuit Court of Appeals denied the relief prayed for, and on appeal to the Supreme Court the action of the Circuit Court of Appeals was reversed; the opinion being placed upon the ground that under the decisions of the Supreme Court of Illinois the plaintiffs therein had a vested interest in the premises, which entitled them under the federal equity practice to the relief demanded. In the opinion the court said:

"It is settled by the decisions of the Supreme Court of Illinois that an oil and gas lease like that of complainants passes to the lessee, his heirs and assigns, a present vested right—'a freehold. interest'—in the premises, that this interest is taxable as real property, and that the clause giving the lessee an option to surrender the lease at any time is valid, does not create a tenancy at will, or give the lessor an option to compel a surrender, and does not make the lease void as wanting in mutuality"

—and cites in support thereof a long line of Illinois decisions, announcing this rule; and the opinion continues:

"These decisions constitute rules of property and must be accepted and applied in passing upon the complainant's rights"

—thus showing that the opinion of the Supreme Court was based upon the fact that plaintiffs under the rule in Illinois had a vested right in the premises; and the court, after calling attention to the fact that under the laws of that state plaintiffs had no adequate remedy at law, followed the well-settled rule that the remedies afforded and modes of proceeding pursued in the federal courts, sitting as courts of equity, are not determined by local laws or rules of decision, but by general principles, rules and usages of equity having uniform operation in those courts wherever sitting, and reversed the decision of the Circuit Court of Appeals.

Under the decisions in this state oil and gas, while in the earth, unlike solid minerals, are not the subject of ownership, distinct from the soil, and the grant of the oil and gas, therefore, is a grant, not of the oil that is in the ground, but of such a part as the grantee may find, and passes nothing that can be the subject of ejectment or other real action. *Kolachny v. Galbreath et al.*, 26 Okla.

772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; *Frank Oil Co. v. Belleview Gas & Oil Co. et al.*, 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487; *Duff et al. v. Keaton et al.*, 33 Okla. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472. From the above quotation it is seen that, under the decisions of Illinois, "the clause giving the lessee an option to surrender the lease at any time is valid, does not create a tenancy at will, or give the lessor an option to compel a surrender, and does not make the lease void as wanting in mutuality," while the rule in this state is that contracts unperformed, without sufficient consideration, which are optional as to one, are optional as to both, and specific performance thereof will not be awarded. See authorities above cited.

Another distinction is observed between the rule in this state and the rule in Illinois. Under the statutes of that state the lessor could not forfeit the lease without giving notice to lessee upon default in the payment of rentals. We have no such statute. The present action is one to compel specific performance of an agreement to execute a lease, while *Guffey v. Smith* was not such an action; its character being stated thus by the Supreme Court:

"Rightly understood, this is not a suit for specific performance. Its purpose is not to enforce an executory contract to give a lease, or even to enforce an executory promise in a lease already given, but to protect a present vested leasehold, amounting to a freehold interest, from continuing an irreparable injury calculated to accomplish its practical destruction. The complaint is not that performance of some promised act is being withheld or refused, but that complainants' vested freehold right is being wrongfully violated and impaired in a way which calls for preventive relief."

It is thus seen that the rule in the Guffey case was based upon the principles that the decisions in Illinois constituted a rule of property, and as such were binding upon the federal courts, while those courts sitting as courts of equity were at liberty to apply their own remedies according to their own modes of procedure. This is the rule of the federal courts, and has been the uninterrupted holding of the Supreme Court of the United States. In *Elmendorf v. Taylor*, 10 Wheat. 152, 6 L. Ed. 289, Chief Justice Marshall used the following language:

"This court has universally professed its disposition, in cases depending on the laws of the particular state, to adopt the construction which the courts of the state have given to those laws."

This rule has been applied to rights acquired under an oil and gas lease similar to the one under consideration, arising in states where the rule which we have adopted prevails. In *Ohio Oil Co. v. Indiana*, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729, Mr. Justice White, now chief justice, speaking for the court said:

"It is apparent that the cases in question [referring to the Indiana cases], in accord with the rule of general law, settle the rule of property in the State of Indiana to be as follows: Although, in virtue of his proprietorship, the owner of the surface may bore wells for the purpose of extracting natural gas and oil, until these substances are actually reduced by him to possession, he has no title whatever to them as owner; that is, he has the exclusive right on his own land to seek to acquire them, but they do not become his property until the effort has resulted in dominion and control by actual possession."

The same view, as applied to leases of this character, is also declared in the following cases: *Huggins v. Daley*, 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320;

*Foster v. Elk Fork Oil & Gas Co.*, 90 Fed. 178, 32 C. C. A. 560; *Federal Oil Co. v. Western Oil Co.*, 121 Fed. 674, 57 C. C. A. 428.   In the case last cited the court say:

"The contract we are construing is a contract made and to be performed in West Virginia.   *   *   *   The cases quoted lay down a rule of property, stating the controlling doctrine peculiar to mining leases in that state.   The federal courts recognize and follow the decisions of courts of last resort in the state."

The original opinion is in harmony with the opinion by this court, and with the weight of authority, and is supported by sound reason, and this rule having been declared as early as 1910, and many leases having been executed in reliance thereupon, it would require very strong and cogent reasons for us to abandon same, and adopt a new rule in direct conflict therewith.   To do so would create confusion and uncertainty, and perhaps flood the courts with litigation, and the opinion in *Guffey v. Smith*, being simply an application of the principle that state decisions construing leases of this character constitute rules of property which will be followed in the federal courts, furnishes no reason for overturning the previous decisions of this court.

The petition for rehearing is therefore overruled.

All the Justices concur.